Deborah LEE, Appellant,

v.

Donald S. PETERS, Respondent.

No. WD 67998.

Missouri Court of Appeals,
Western District.

April 22, 2008.

William C. Hopkins, II, Kansas City, MO, for Appellant.

Timothy R. Brownlee, Kansas City, MO, for Respondent.

Before HOWARD, C.J., DANDURAND, and AHUJA, JJ.

JOSEPH P. DANDURAND, Judge.

Deborah Lee appeals the judgment of the Ray County Circuit Court denying her action against Donald Peters for fees and penalties pursuant to Section 443.130. She claims in her two points on appeal that (1) the trial court erred in assessing attorney fees and other charges against her tender and (2) the trial court erred in not finding Mr. Peters waived any insufficiency of tender. The second point is granted, and the judgment is reversed and remanded.

## Facts

Gladys H. Lee was the owner in fee simple of certain real property ("Property"). On December 15, 1999, Gladys Lee obtained a loan in the amount of $11,500 from Commerce Bank of Excelsior Springs ("Bank"). The loan was evidenced by a note ("Note") and secured by a deed of trust ("Deed of Trust") on the Property. The Note was made in the amount of $11,500, bearing simple interest at 9%, with monthly installment payments of $145.68, and a maturity date of January 1, 2010. It allowed the borrower to make prepayments without penalty. On November 22, 2002, Gladys Lee executed a beneficiary deed conveying the Property to Deborah Lee and Tamara Rutledge.[1] Gladys Lee died on November 25, 2002.

On June 3, 2003, the Bank sent a notice of default to Gladys Lee. On August 14, 2003, the Bank transferred the Note and Deed of Trust for Property to Donald Peters for the sum of $11,448.28. Mr. Peters purchased the Note to protect Ms. Rutledge, a friend, from Bank foreclosure.

---

1. Gladys Lee was the mother of Deborah Lee and Tamara Rutledge.

On December 19, 2003, Mr. Peters' attorney wrote Gladys Lee, advising her that the Note was in default and demanding payment in the amount of $13,250.39 plus interest and attorneys' fees. Copies of the letter were sent via certified mail to Deborah Lee [2] and Tamara Rutledge. On December 23, 2003, Ms. Lee's attorney replied to the letter and requested information about the debt. On December 30, 2003, Mr. Peters' attorney mailed copies of the Note, Deed of Trust, and payment history to Ms. Lee's attorney.

Ms. Rutledge had previously filed for Chapter 7 bankruptcy, with David Seitter serving as the trustee. On January 5, 2004, an attorney for Mr. Seitter advised Mr. Peters' attorney of Ms. Rutledge's bankruptcy and notified him that the Property might be part of her bankruptcy estate. The letter indicated collection proceedings against the Property should not move forward.

On August 19, 2004, Ms. Lee's attorney sent a letter to Mr. Peters inquiring as to the pay-off balance of the Note. The letter stated: "[u]pon receipt of [the pay-off] amount, our client will promptly tender to you sufficient funds to satisfy such balance" as well as "a satisfaction and deed of release that must be signed by you and notarized and returned to us." On September 13, 2004, Mr. Peters' attorney replied via letter, stating "[t]o my knowledge there are no living individuals who are signors on the note and so I am advising you that you must be making contact with the wrong party."

On September 16, 2004, Ms. Lee's attorney again requested Mr. Peters' attorney to provide a pay-off amount for the Note, informing Mr. Peters that she received title to the Property upon Gladys Lee's death. The letter stated: "Deborah Lee desires to pay immediately the total balance owed on the [Note]. She has sufficient available funds and is ready, willing, and able to pay." The letter requested "the total balance currently owed on the note ... includ[ing] a breakdown of that amount noting specific amounts charged as principal, interest and other fees that may apply." On October 6, 2004, Mr. Peters' attorney responded via letter, stating: "As I wrote earlier I do not see your client on the note."

On November 1, 2004, Ms. Lee's attorney sent to Mr. Peters' attorney a certified letter and a cashier's check in the amount of $14,223.00 to cover payment of the Note. The letter demanded release of the Deed of Trust within 15 days pursuant to Section 443.130. The letter requested "that Mr. Peters accept payment for the total amount due under the note ... [a]s we have been unable to verify the total amount owed, if any funds are due Ms. Lee, payment should be remitted in the form of a certified bank draft." On November 5, 2004, Mr. Peters' attorney returned the cashier's check to Ms. Lee's attorney, stating via letter: "The cover letter accompanying the certified check is inaccurate and the note is not for sale at this point."

On November 10, 2004, Ms. Lee's attorney sent another letter to Mr. Peters' attorney, presenting the cashier's check and demanding release of the Deed of Trust. Also included were copies of Gladys Lee's death certificate and the beneficiary deed identifying Ms. Lee as co-grantee. Mr. Peters' attorney responded via letter on November 22, 2004. The letter declared that Ms. Lee was neither a signatory nor a

---

**2.** For the sake of clarity, Gladys Lee will be referred to by her full name while Deborah Lee, the Plaintiff in the underlying action and Appellant on appeal, will be referred to as Ms. Lee.

party to the Note. It also stated: "Again, your tendered check is rejected."

On December 8, 2004, Ms. Lee filed this action against Mr. Peters. Count I sought an order of specific performance requiring Mr. Peters to accept tender and release the Deed of Trust. Count I also sought the damages authorized pursuant to **Section 443.130**. Count II alleged slander of title and sought punitive damages.[3]

After Mr. Peters filed his answer, Ms. Lee moved for partial summary judgment. In its Partial Summary Judgment, dated March 22, 2006, the trial court made the following unchallenged findings:

Ms. Lee was the owner of an undivided one-half interest in the Property.

As an owner, Ms. Lee had the right to pay off the balance of the Note without prepayment charges or penalties as provided in the Note.

The fact that Ms. Rutledge had recently been in bankruptcy and may own the other one-half interest in the Property would not have prevented Mr. Peters from accepting payment in full for the Note.

On November 1, 2004, Ms. Lee tendered to Mr. Peters a certified check in the amount of $14,223.00 in payment of the Note and demanded the release of the Deed of Trust within 15 days as provided by Section 443.130.

There was no evidence submitted by either party as to what exact amount was due and owing on the Note as of November 1, 2004. Therefore, there was no evidence demonstrating that the cashier's check was of a sufficient amount to pay for the recording of the Deed of Release as required by Section 443.130.

The $14,223.00 tendered to Mr. Peters on November 1, 2004, was sufficient to pay in full all amounts due and owing under the Note. Therefore, Mr. Peters had no legal basis to reject the payment for the Note. Further, Mr. Peters had a legal obligation to provide Ms. Lee with a Deed of Release which she could record.

Ms. Lee is entitled to her request for specific performance of having Mr. Peters satisfy the Note and provide a Deed of Release.

The Partial Summary Judgment disposed of all issues except whether Ms. Lee could recover for damages and attorneys' fees pursuant to Section 443.130. Ms. Lee's claim for damages and statutory penalty were tried to the court on August 28, 2006. Judgment was entered on December 29, 2006. In its judgment, the court found as follows:

In order to recover, Ms. Lee must have paid Mr. Peters the unpaid principle, interest, attorneys' fees, penalties, and funds sufficient to pay the recording fee for the release.

On November 3, 2005, Ms. Lee tendered to Mr. Peters $14,223.00 to cover the foregoing expenses. $13,250.39 was owed for the balance of the principle of the Note and penalties and interest thereon. This leaves $972.61 to be applied for attorneys' fees and recording costs.

To recover pursuant to Section 443.130, Ms. Lee must have paid a sufficient amount to cover attorneys' fees. This is pursuant to Section 443.060(1), which provides: "... if any ... assignee ... receives full satisfaction of any *security instrument*, he shall...."

The Deed of Trust provided for the recovery of attorneys' fees. Mr. Peters is entitled to recover attorneys' fees incurred while protecting his rights in the

---

**3.** Count II did not proceed to trial.

Note since the borrower failed to make payments as required in the Note.

Of all attorneys' fees incurred prior to November 3, 2005, at least a minimum of $972.61 was incurred pursuant to the security instrument. Therefore, an insufficient amount was tendered to include payment of the recording costs. The court entered judgment in favor of Mr. Peters and against Ms. Lee on the issue of damages and attorneys' fees pursuant to **Section 443.130**. This appeal followed.

## Standard of Review

 When reviewing a court-tried case, the trial court's judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Point I

In her first point on appeal, Ms. Lee contends the trial court erred in denying her claim for damages and penalties pursuant to **Section 443.130** on the basis that her tender was insufficient to pay the recording fee. She maintains that the court improperly assessed Mr. Peters' attorneys' fees and other charges not incurred in enforcing the Deed of Trust. Given the disposition of Point II, this point is not addressed.

## Point II

 In her second point on appeal, Ms. Lee contends the trial court erred in denying her claim for damages and penalties pursuant to **Section 443.130** on the basis that her tender was insufficient to pay the recording fee. She maintains that Mr. Peters waived any insufficiency when he twice refused tender and refused to disclose the sum due after repeated demands. The point is granted.[4]

 "An objection to a tender, to be available to a creditor, must be timely made, and the grounds of the objection specified, otherwise it is waived." *Capital City Motors, Inc. v. Thomas W. Garland, Inc.*, 363 S.W.2d 575, 579 (Mo.1962); *see also Gieselmann v. Stegeman*, 443 S.W.2d 127, 137 (Mo.1969). "Who does not speak when he should may not when he would." *Capital City Motors, Inc.*, 363 S.W.2d at 579 (quotation marks and citation omitted). When a creditor refuses tender on the basis of Objection A, the creditor may not later claim tender was rejected on the basis of Objection B unless the debtor was made aware of Objection B at the time tender was rejected. The court in *Thomp-*

---

4. A transcript of the August 28, 2006, trial was not filed at the time Appellant and Respondent briefs were filed. In his brief, Mr. Peters argues that Ms. Lee failed to preserve the waiver argument by raising it at trial. A review of the transcript, which was subsequently filed with this court's permission, reveals that Ms. Lee did preserve her claim of waiver. Mr. Peters conceded this at oral argument. Mr. Peters' brief also asserts that Ms. Lee's point should be denied because a transcript was not filed as required by Rule 81.12. This argument became moot upon the filing of the transcript.

Mr. Peters also claims that Ms. Lee's point should be denied because of a failure to ad-

here to Rule 84.04(e) and (h). Mr. Peters states that Ms. Lee's brief fails to set forth the applicable standard of review and fails to separately bind the appendix even though it is over 30 pages in length. "An appellate court prefers to dispose of a case on the merits rather than to dismiss an appeal for deficiencies in the brief." *Lueker v. Mo. W. State Univ.*, 241 S.W.3d 865, 867 (Mo.App. W.D. 2008). "However, '[i]n some cases, a brief may be so deficient that it precludes appellate review.'" *Id.* (citation omitted). This is not such a case, and this court will address the merits of Ms. Lee's appeal.

*son v. St. Charles County,* 227 Mo. 220, 126 S.W. 1044 (1910), stated:

> When the tender of the warrant was made, the only objection was the amount, not the character or form of the tender. The objection made at the time became, therefore, the only one available to plaintiff on the form of the tender. Who does not speak when he should may not when he would. "The tender should be in money made lawful by the state in which it is offered. But if it is offered in bank bills which are current and good, and there is no objection to them at the time on the ground that they are not money, it will be considered so far an objection of form that it cannot afterwards be advanced." 2 Par. on Con. [9th Ed.] bottom p. 798. In support of the text the author cites some English cases, and the editor, Mr. Gould, cites three American cases-*Walsh v. St. Louis, etc., Ass'n,* 101 Mo. 534, 14 S.W. 722; *Duffy v. O'Donovan,* 46 N.Y. 223; *Harriman v. Meyer,* 45 Ark. 37. In the Walsh Case we said: "The defendant, it is true, did not tender the money, only its check upon the bank with which it transacted its business. * * * The plaintiff refused to receive the money not because it was tendered by way of a check but because he claimed the appointment of architect and superintendent. By declining to accept the award of $500, the plaintiff waived the production of money." Page 548 of 101 Mo., page 726 of 14 S.W. The Arkansas case put the matter on the ground of estoppel, one of the headnotes reading: "Where payment of a purchaser's bid for property sold at auction is tendered in an order of a third party, and is refused by the owner of the property on the sole ground that the sale was for an inadequate price, he cannot in a subsequent suit for the property object that the tender was not in ready money." In the New York case, a tender was made by check duly certified. The refusal was upon the ground that the time of performance had passed. On that state of facts it was ruled that the right to demand money was waived because the refusal was not put upon the ground that it was not in money. To the same effect are *Beckham v. Puckett,* 88 Mo. App. 636, and *Whelan v. Reilley,* 61 Mo., loc. cit. 568 et seq. See, also, *Berthold v. Reyburn,* 37 Mo. 586.

*Id.* at 1048–49. The court in *Chisholm v. Concannon,* 141 S.W.2d 172 (Mo.App. 1940), stated:

> As we have outlined above there is ample testimony to support a finding that on August 29, 1936, when Lamb offered the several items as a tender to Dockery as payment in full of the amount due Macken from plaintiff, Dockery's declination to accept the same was based upon the insistence that in addition to the amount offered there was due Macken an additional unpaid six months' interest note amounting to $170 and also $53 which Macken claimed to have paid as a premium on a fire insurance policy on the property covered by the deed of trust securing the loan, and that no objection was made either as to the medium of the tender or that the amount tendered, as based on the unpaid principal note and one six months' interest note, was not sufficient in amount. Dockery's refusal to accept the tender on the sole ground that Macken was entitled to the payment of an additional six months' interest note and the said insurance item, brings the case within the rule that a creditor will be estopped from subsequently urging an objection suppressed at the time of a tender, against one who under those circumstances properly declined to tender payment of demands for payment of addi-

tional items not owed by him. *Smith v. Reserve Loan Life Ins. Co.,* 267 Mo. 342, 184 S.W. 464; *Whelan v. Reilly,* 61 Mo. 565, *Id.,* 61 Mo. 578; *Thompson v. St. Charles County,* 227 Mo. 220, 126 S.W. 1044; *Raymond v. McKinney,* 58 Mo. App. 303.

Since, as we have pointed out above, the character of the tender as well as any variance in the amount thereof offered by the plaintiff were, in our view, under the facts in the case, waived, and the additional items demanded were not proper chargeable items, the court properly found the issues for plaintiff and did not permanently enjoin foreclosure on the release of the deed of trust without requiring the payment of the amount actually due. *Landis v. Saxton,* 89 Mo. 375, 1 S.W. 359.

*Id.* at 173–74. The court in *Capital City Motors, Inc. v. Thomas W. Garland, Inc.,* 363 S.W.2d 575 (Mo.1962), stated:

An objection that a tender does not include interest is waived where ... the tender is refused solely on another ground.... Not having objected to the amount of the tender at the time the check was received in the mail, on the ground that it failed to include interest on $1,000 for four days, respondent waived the objection.

*Id.* at 579 (citations omitted). The court in *Citizens State Bank of Nevada v. Wales,* 469 S.W.2d 750 (Mo.App.1971), stated:

More apropos here are the comments and holding in *Capital City Motors, Inc. v. Thomas W. Garland, Inc.,* Mo., 363 S.W.2d 575, 579(5, 6) [1962], in rejecting a contention resting on a 44¢ tender insufficiency: 'Respondent's contention is without merit. The law does not concern itself with trifles. *Matzger v. Page,* (62 Wash. 170, 113 P. 254, 255); 86 C.J.S. Tender s 8a, p. 563. Furthermore, respondent waived the 44¢. An objection to a tender, to be available to a creditor, must be timely made, and the grounds of the objection specified, otherwise it is waived. 86 C.J.S. Tender s 12, p. 565.'

*Id.* at 758. The court in *Mercantile Bank of Sikeston v. Moore,* 935 S.W.2d 762 (Mo. App. S.D.1996), stated:

The Moores argue, however, that Mercantile did not object to the tender on the basis argued in the trial court and on which the court based its findings. They contend that by failing to do so, those objections were waived. They rely on cases such as *Capital City Motors, Inc. v. Thomas W. Garland, Inc.,* 363 S.W.2d 575, 579 (Mo.1962), and *Citizens State Bank of Nevada v. Wales,* 469 S.W.2d 750, 758 (Mo.App.1971), for the proposition that unless an objection to a tender is timely made and the grounds specified, it is waived. Those cases, however, did not involve an issue of whether the alleged tender did in fact qualify as a tender in the first place. They do not purport to stand for the proposition that an offer of settlement can become a tender because of the failure of the creditor to object to its conditional nature. An express objection to a tender is not always required where the reasons for rejection of the tender are obvious. *Baker v. McCue–Moyle Dev. Co.,* 695 S.W.2d 906, 913 (Mo.App. E.D.1984). Mercantile's lawyer, upon returning the check, told Moores' lawyer that "[w]e do not agree with the terms contained in your letter." Although he proceeded to explain that Mercantile was looking to the Moores for all of the indebtedness, we are unable to conclude that this explanation necessarily limited the earlier express disagreement with the "terms" of the transmittal letter.

*Id.* at 769.

■ The trial court denied Ms. Lee's claims pursuant to **Section 443.130** be-

cause it found her tender was insufficient to cover the recording costs.[5] Ms. Lee argues that Mr. Peters waived any insufficiency in her tender of the debt due by refusing tender without disclosing the sum needed to satisfy the debt. As detailed in the statement of facts, Ms. Lee repeatedly attempted to ascertain from Mr. Peters the amount outstanding under the Note. Unable to obtain an answer, Ms. Lee tendered to Mr. Peters a cashier's check in the amount of $14,223.00 on November 1, 2004. The tender letter demanded release of the Deed of Trust and, as Ms. Lee was unsure of the amount due, a refund of any overpayment. That tender was rejected on the basis that the "cover letter was inaccurate and the note is not for sale." Ms. Lee re-tendered the cashier's check on November 10, 2004. That tender was also refused on the basis that Ms. Lee was neither a signatory nor a party under the Note.

Mr. Peters never rejected tender on the basis that it was an insufficient sum.[6] He asserted that Ms. Lee was not obligated pursuant to the Note, did not have a right to pay the debt, and that he was unwilling to sell the Note to her. By not asserting that the amount tendered was insufficient either time he rejected tender, he waived the argument.

In his brief, Mr. Peters does not claim that he rejected tender on the basis that the amount was insufficient. Instead, he focuses on the *Chisholm* case, arguing that it is distinguishable from the case *sub judice*. First, he claims the creditor in *Chisholm* demanded that the debtor include payment of additional amounts not owed by the debtor. He states the court's holding was premised on the additional amounts requested not being actually owed. Second, Mr. Peters claims *Chisholm* is inapplicable because it was a suit in equity as opposed to the statutory action brought by Ms. Lee. He assigns significance to the fact that Ms. Lee's action is based on a penal statute. He cites the rule that strict statutory compliance is required when debtor/creditor statutes are involved. Mr. Peters also states that *Chisholm* has not been followed or cited in subsequent Missouri cases.

"The purpose of section 443.130 is to enforce the duty of the mortgagee to clear the mortgagor's title, so that the record is no longer encumbered." *Garr v. Countrywide Home Loans, Inc.,* 137 S.W.3d 457, 460 (Mo. banc 2004). "Section 443.130 is an 'enforcement mechanism for section 443.060.01 ... which requires a mortgagee to deliver a 'sufficient deed of release of the security instrument' upon satisfaction of the instrument.'" *Glass v. First Nat'l Bank of St. Louis,* 191 S.W.3d 662, 665 (Mo. banc 2006) (citation omitted). "Section 443.130 is penal in nature, so it must be strictly construed." *Id.* (quotation marks omitted). "Any demand letter purporting to invoke section 443.130 should closely track the language of the statute to place the mortgagee on notice that the statutory demand is being made." *Id.* (quotation marks omitted). "While no particular language is specifically required to be included in the letter, the letter must

---

5. Ms. Lee's trial brief and argument to the trial court raised the issue of waiver. The judgment fails to address this issue, however. As the trial court did not make specific findings regarding waiver, it is presumed to have made its findings in accordance with the judgment. *Spencer Reed Group v. Pickett,* 163 S.W.3d 570, 573 (Mo.App. W.D.2005).

6. In his brief, Mr. Peters claims he presented evidence at trial explaining why he refused tender. He does not state what those reasons were, however. This court's review of the record does not reveal reasons other than those stated in the letters rejecting tender.

somehow put the lender on notice that a demand is made under section 443.130." *Id.* (quotation marks omitted). A debtor seeking relief under the statute need not establish that he suffered any prejudice to qualify for relief. *Id.* at 666.

■ The rule of waiver pertaining to rejected tender has been asserted in a variety of contexts over a long period of time, as is apparent from a review of the cases cited and excerpted,[7] *supra.* Moreover, cases requiring strict construction of **Section 443.130** usually pertain to the language required in the demand letter. Mr. Peters is not maintaining that he was unaware a demand was being made pursuant to Section 443.130. Further, strict construction is not without flexibility; as noted, no particular language is required. Finally, while *Chisholm* may not have been cited or followed in subsequent cases, precedent does not lose its value simply because it is old. *See Steen v. Colombo,* 722 S.W.2d 648, 650 (Mo.App. S.D.1987)(stating that a particular case, "while old law, is still good law"); *Burton v. Pet, Inc.,* 509 S.W.2d 95, 100 (Mo.1974)(stating that a case from 1881 "is an old case, but still good law"). Moreover, cases subsequent to *Chisholm* have recited the rule of waiver as it pertains to the rejection of tender.

Finally, Mr. Peters argued during oral argument that Ms. Lee has already received everything she sought. While the trial court had the motion for partial summary judgment under advisement, Ms. Lee again tendered payment. Mr. Peters accepted the tender "with reservation of deficiency claims," and a Deed of Release was recorded. Ms. Lee did obtain her

desired outcome, but she did so only after incurring attorneys' fees and expenses in the prosecution of this case. **Section 443.130** is intended, in part, to prevent this very scenario.

The point is granted. The judgment is reversed and remanded. On remand, the trial court is to determine the fees and penalties to which Ms. Lee is entitled under **Section 443.130.**

### Conclusion

As Ms. Lee's second point is dispositive, her first point is not addressed. Her second point is granted. Mr. Peters waived any insufficiency in tender by not objecting to the amount at the time he rejected tender. The judgment of the trial court is reversed, and the case is remanded for actions not inconsistent with this opinion.

All concur.

---

7. *Capital City* was a suit by a holder in due course to recover on a promissory note. *Gieselmann* was an action by shareholders against a corporation. *Thompson* involved a claim of breach of contract. *Citizens State Bank* was an action to replevy a mortgaged vehicle. *Mercantile Bank* involved a deficiency action against guarantors of defaulted promissory notes.